The next case is number 25-2060 Mayra Bonilla-Gomez et al. v. Todd Blanche. Mr. Hoppeck. Good morning, your honors. May it please the court. I'm Matthew Hoppeck on behalf of this immigration petitioner Mayra Bonilla-Gomez and her son. This is a somewhat simple appeal and there are simple ways to send it back to the agency. The court really doesn't need to get into most of what happened here because the clearest issue has to do with country designation, which is governed by a very clear statute. In a lot of immigration contexts, we have to sort of read between the lines, try to figure out what Congress or the agency meant when they promulgated regulations or wrote statutes. And we've lost the doctrine about deference that would tell the court to send cases back when the agency is interpreting its own regulations. But here you don't have any vagueness in a statute. The statute about removability talks quite plainly about which countries can be designated and who gets the right to designate them. And it then uses that designation to direct the Department of Homeland Security as to which country it can remove people to. It may seem like a technicality, but it's the underlying authority to remove people from the country. The ambiguity is timing. When must compliance, what is compliance at the immigration judge preliminary proceedings? Well, I think there are two things that speak to that, the statute and the regulation. The statute doesn't, it says, but the ambiguity is what we care about at the outset is statutory ambiguity. Well, the statute says that the non-citizen shall be given the opportunity or it says may designate a country to be removed to. And then it says an immigration judge can disregard that designation. The first instance is timing. If she doesn't designate promptly, I think that's what the court is getting to. No, I'm getting at the early stages of this procedure were a mess. Yeah, they certainly were, I agree. And contributed by particularly your client and her prior attorneys. Leaving the immigration judge with 10 months of non-compliance with basic procedural directions, followed by appearance with a new lawyer and then non-responsiveness to what's going on here. Why haven't you complied? I can speak to what the court is talking about. When did the immigration judge in your view have a duty as a matter of law to step in and say, now you must, I have to tell you, you have a right to designate a country. Well, they're two separate issues, so I want to talk about designation. In March or in December, I can't remember the months, but it was 10 month gap. Yeah, it's not, well, the statute says when the person's been ordered removed, but that's not practical. So the regulation, right? There you go, so now we're into ambiguity number one. No, no, the reason I say it's not practical is the removal order happens at the very end, but the agency has promulgated a regulation that moves it to the beginning. At 1240.10, they have the judge do the designations at the beginning, right when there's a pleading. Yep. So the judge takes a pleading, and then the judge asks whether you designate the country, and if you decline to designate, then the government attorney designates the country. The pleading is the app, right, and she wouldn't do an app. No, no. The asylum app. No, they're two separate issues. Well, I know. Removability. Yeah, there's a notice of removal. Right. 8 CFR 1240.10 talks about the pleading to the charges in the notice to appear. That is, are you a citizen of the United States? If not, are you a citizen of Honduras, and did you come here illegally? That's the pleading I'm talking about. What document is that in the record? It's the notice to appear, 168 in the administrative record. Wait, that's not a pleading by the alien. The regulation requires. Pleading by the government. The regulation calls it a pleading. What it is is the judge asking the noncitizen to admit or deny that those are true, and as a matter of practice, if removability is found. She has to be there. I'm not understanding the question, Your Honor. There were how many appearances before we get to the point where the IJ makes this horrible ruling? There were two total appearances, spaced three months apart, with Thanksgiving, Christmas, and New Year's in between. One was in October, where the judge gives her the application. She's then attacked, hospitalized, placed in a domestic violence shelter, and Thanksgiving, Christmas, and New Year's occur, and the second hearing is January 30th, 2020, three months later. But I want to make sure I'm clarifying what I think is some confusion. I'm talking about the procedure of when is the judge supposed to designate the country of removal? I want to know when was the error of law committed by the immigration judge. At the second hearing. It's in the transcript where the judge says, Ma'am, are you a citizen of the United States, yes or no? She says no. He says, Are you a citizen of Honduras? She says yes. And he says, I find you removable, and I designate Honduras. The statute says the judge isn't allowed to do that, doesn't have authority to do that. The statute says if the judge finds removability. I don't think that's right. But anyway, let's. I think this is. I'll stay right there on the statute, because this is the issue. Now, the judge doesn't necessarily not have to do Honduras, right? The judge could say, which country do you want to go to? I'd like to go to Guatemala. Okay. Now I'm deciding you're going to Honduras. The judge doesn't have to. I mean, I understand your argument is he never asked. But you made it sound like once she says what the country of removal is, that the immigration judge has to take it. No, that's not it. Yeah, it's all right there in the statute, 1231B. So it starts out with the judge must let her designate, and then the judge shall remove to the country of designation. But then the next section, subsection B, says limitations on designations. It says if you're coming, if you're designating a contiguous country, like I want you to remove me to Canada, you need to be from Canada. And then the third section, subsection C, says the judge may disregard the designation if it's not prompt or if the country designated doesn't respond or if the country designated says we're not accepting her affirmatively or the attorney general decides that it's prejudicial to the United States. It never got there. She didn't do anything. Probably the application that she didn't file would have had a designation box to check. No, they're two separate issues. The asylum application is released. I've done so many of these darn cases. This is the first Eighth Circuit case that's raised this issue. I don't think this issue's been raised in the Eighth Circuit before. I've seen these. The 1231 obligation of the immigration judge is before relief. You don't get to relief until you've decided removability and what country you're going to, and then you apply for asylum. They're two separate things. And 1240.10 puts that onus on the judge, as does the statute, and doesn't give him any authority to order a person removed to a country that hasn't been designated. It's jurisdictional. And it also really shackles the Department of Homeland Security, because their job is to follow the statute and deport the person to the country designated. But no country was designated. And so you have a chaotic mess of these agencies that now, how do they follow the law and remove this person to the right country? To the country Congress in 1231.b, subsection b, said is the country that is to be designated. I appreciate that. Unless the Court has any other questions. Thank you. Mr. Callahan. Thank you, Your Honors, and may it please the Court. I want to start off by trying to help clarify some of the procedures. I think my colleague is largely correct about the designation issue and the opportunity to designate. That usually comes when the non-citizen offers pleadings, which, when they're represented, often looks like, do you admit and concede to the allegations and charges in the NTA? I didn't understand. Now you're going fine, and then I mumbled. I'm sorry. The pleadings is usually, when they're represented, they'll come to their hearing. The immigration judge will ask their counsel, do you admit the allegations in the NTA and concede the charge of removability? Those are the pleadings. That happened a little bit differently, not problematically, just differently in this case because we had a pro se person. The immigration judge asked questions. Are you a citizen of the United States? Are you a citizen of Honduras? That would lead to the confirmation of the allegations in the NTA and sustain the charge of removability. So I think my colleague is right that, at that point, the regulation instructs that the immigration judge is to, I think the language is, afford the non-citizen an opportunity to make such designation. I just wanted to clarify how that's supposed to go for Your Honor's questions. But I think when we're talking about this designation issue, we really need to look at harmless error because this is not a case where Ms. Bonilla-Gomez was trying to designate a particular country or trying to say really anything specific. My colleague is right that the immigration judge does say, I am designating Honduras. Ms. Bonilla-Gomez says nothing to that. Maybe because she thought it was a final decision. I mean, if you're admitting that there was error, I have a hard time figuring that it's harmless because the district judge never said, do you have a country of your own where you'd like to be removed or whatever? And then maybe she says nothing then. But if I'm a foreign national and I'm standing there and the judge tells me where I'm going, it doesn't leave me an opportunity to say anything. I don't know how we can expect her to say, oh, I know because of the regulation I want to go to wherever, Guatemala or Mexico or wherever. Well, respectfully, Your Honor, there is a period at the end of the hearing where the immigration judge is taking Ms. Bonilla-Gomez's questions about appeals and things. And she doesn't say anything there about, well, I don't want to go to Honduras. I want to go anywhere else. So she did have an opportunity to talk to the immigration judge then. She didn't bring it up there. Is that enough, though? I mean, I can see the point that you're making, which is I don't want to go to Honduras. But do we somehow attribute her without the immigration judge saying so, you can designate a different country? I mean, that to me is the step that might be expecting a little too much from a pro se litigant. I understand, Your Honor. I think that that one opportunity in itself is maybe not enough. But when Ms. Bonilla-Gomez, with the assistance of counsel, then files her notice of appeal to the board, it says nothing about the country designation issue. It's not until her attorneys have been able to dig into the case a little bit and we start to hear about the country designation issue in the brief to the board. And even then, they only say that it's possible that she would have declined to designate a country or chosen a country other than Honduras. It doesn't say that she wanted to, that she was trying to, that she didn't understand her ability to do that and would have wanted to exercise it. It doesn't certainly identify any other country. It's not until we get to the briefing before this Court that we start to get some specificity from Petitioner's attorneys identifying Spain as a potential country of removal. That really isn't a harmless error argument. That's almost a waiver of remedy argument. Well, Your Honor, I don't understand how the government expects us to deny the petition for review on a harmless error theory based on this colloquy. Well, Your Honor, I don't think that it's a waiver of remedy issue because she did bring it up in her brief to the board. Like I say, she doesn't say that she wanted to do anything else or that she was trying to do anything else. I mean, it's after, it's almost, it's during, it's in petitioning for review. Yes, Your Honor. Without ever putting forth what remedy was wanted. What good does a remand do? Now, in terms of how we formulate a disposition based on that kind of reasoning, if we send it back, what does the BIA do? Well, Your Honor, I think that's an excellent question. Well, it's a key question. Yes. If the government doesn't have a position on that for this Court, we aren't going to do it. No, Your Honor, I think that if you were to find that there was a violation of the procedures and that that violation was prejudicial, then you would have to remand for the board to address it. I think the most likely outcome would be for the board to remand back to the immigration judge to hold another hearing and explicitly afford the opportunity to designate a country. Why can't the board just, well, okay, come designate. Well, Your Honor, I think that that is another great point is that Ms. Bonilla-Gomez hasn't done anything to try to designate another country. She's struggling with her position. Yes, Your Honor. You know, if the evil here was I wasn't given an opportunity to designate, then the cure ought to be, okay, come designate. You know, meanwhile, you've avoided removal for a while, but removal is still likely to be the ultimate. I think she has not been removed, right? No, she has not been removed. Is that by agreement or? No, when I spoke with my colleagues at Homeland Security, she had just, they did not have any plans yet to remove her. Okay, so she's subject to removal right now. Yes, she could be removed, but DHS, as of the last time I spoke to them last week, had no plans to do that. So there's no harm to the United States by just saying, come designate. Well, Your Honor, I think it's just a procedural issue because the board doesn't hold hearings and they can't take new evidence. And the regulation, well, the statute and the regulation. Maybe substantive wrongs deserve a remedy, but a lot of procedural wrongs just require a simple cure. And nobody wants a simple cure here. Well, Your Honor, I think that I just want to remedy an issue that actually needs to be remedied. Because Ms. Padilla-Gomez has never indicated that she wants to do anything else. She's just noting that she could have done something else. I want to remedy a legal error that you admitted. You can call that something that's beside, beyond the point or whatever. That's what I want to remedy. You don't want to remedy that. Well, I just want a remedy if there needs to be a remedy. But Ms. Padilla-Gomez has never communicated anything to the Department of Homeland Security asking for a different country of removal. You can't argue harmless. That's not a harmless theory. You could argue waiver. You could argue forfeiture. You could argue failure to exhaust. You could argue a lot of things caused by inaction. Your Honor, respectfully, this court has said that in order to establish a due process violation, the petitioner must show actual prejudice. You're going to have to lecture me on due process. Oh, I'm so sorry, Your Honor. I did not mean to lecture you. We're beyond due process. There's an element of due process in the statute and the reg. But compliance is a legal duty whether breach of the duty amounts to a deprivation of due process or not. Well, Your Honor, as I understand it, due process requires a demonstration of a breach of the procedure and showing of actual prejudice. I don't care if we're not to the breach of due process. We remedy and district courts remedy a lot of administrative procedural errors without labeling them due process violations. Well, Your Honor, respectfully, I'm not labeling this due process. I'm simply responding to my colleague's argument that we violate a due process here. And in that case, we would need a showing of actual prejudice. And all that Mr. Hubbock has demonstrated is the potential for prejudice. Let me just ask you how this works and how it could make a difference because I kind of get to the harmlessness. Let's suppose we remand to the board and the board decides to remand to the immigration judge or keeps it itself. She comes in and she designates Spain. Sure. What happens from there? As I understand it, the Department of Homeland Security would start there. They would request travel papers from Spain accepting her. Spain has, I think it's 30 days to respond. If they respond in the negative and say they won't accept her, then Homeland Security disregards the designation and moves on to the country in which she's a citizen, Honduras. If Spain doesn't respond timely enough, within, I think, the 30 days, they disregard and send her to the country of which she's a citizen. So it can't be harmless, right, because she has a possibility of going to Spain. So it cannot be a harmless error. Judge Ropen's right. This is like a waiver or a forfeiture. But if something different can happen, then it's not a harmless error. Well, respectfully, Your Honor, we have no evidence to indicate that Spain would accept her. Mr. Hoppeck's only shown through extra record evidence that Honduran nationals have the ability to travel legally. I said something could happen, not that something would happen, that there's a possibility of a different result. I see I'm out of time. May I answer Your Honor's question? I think that there needs to be more than a mere possibility for harmless error. We need to have actual prejudice, something that affected the proceedings in a way that they might not have otherwise come out. But we don't have any indication that she wanted to do anything else. So, again, she's only shown the potential for prejudice. And even if she had wanted to do something else, we have no indication that any country, including Spain, would accept her on removal from the United States because lawful travel and immigration under the country's procedure is distinct from being removed from another country. If there are no further questions, thank you for your time. Thank you, Counsel. It is a pretty unique procedure. Oh, go ahead. I'm sorry. Thank you so much. I have two final points I wanted to raise in response to my friend's arguments. First of all, the Ninth Circuit is the only circuit that's addressed this question, and it has rejected the Department of Justice's argument. The argument that my client has to prove Spain would accept her, flat out rejected by the Ninth Circuit. The Ninth Circuit said there should be no presumption that you must go to the country you're from and no other country. And it says that there's no exception under the statute that a judge must give the person that election, even if it ends up being off or not. That's what the statute requires. Now, I want to get at the waiver point because this came awfully late. I mean, you know, as Counsel says, you said, well, there might be an error, but then you didn't try to designate or say that it could be a different country until you came up to us. That's my understanding. But please correct the record if I'm wrong. Well, I think this gets to Remedy. I don't think you're wrong, but it's three pages of her BIA brief is about designation. Three of the seven pages of her BIA brief is about designation, and the board never addresses it in its decision. So I think the sort of primary argument would be Remedy doesn't need to be, hey, tell the board what to do, take a pleading. It's just to send it back to the board and say, do something, address the argument at the start. And then the court doesn't really have to get into these weeds. It's a lot quicker, and frankly, time is more of the essence to the government than to the alien, typically. I agree with the court's preference for efficiency. If we just say that this was a procedural error that needs to be remedied, give her an opportunity to designate. Yeah. And then we'll move on. Or the Attorney General has discretion to deal with the case however they want at the board, but the court's cases say the board has to address it first. And in its entire decision, it doesn't say a word. What court case, Don? I'm sorry? What court case? What says that? Averianova and Omondi both say that the board first has to address the arguments presented to it. It's part of the Chenery Doctrine that says the board has an obligation to first address the issues before this court can then address them. Well, Chenery Doctrine is still alive, but it's not well. Well, I hope it lives to see another day. Thank you very much. Thank you, counsel. It is an unusual procedural situation as well as a substantive serious situation for Ms. Gomez. We'll take it under advisement.